25135.   PROGRESSIVE LIFE INSURANCE COMPANY *v.* HAYGOOD.

DECIDED APRIL 13, 1936.

*Ellis & Bell, Edward R. Vajda, Joseph E. Webb,* for plaintiff in error.

*Tolnas & Middlebrooks, Preston M. Almand,* contra.

JENKINS, P. J. ■ "The illness or absence, from providential cause, of counsel where there is but one, or of the leading counsel where there are more than one, shall be a sufficient ground for continuance: Provided, the party making the application will swear that he can not go safely to trial without the services of such absent counsel, and that he expects his services at the next term, and that said application is not made for delay only." Code of 1933, § 81-1413. "A motion to continue for absence of counsel must affirmatively disclose" these essentials. *Austin* v. *State,* 160 *Ga.* 509 (1, a) (128 S. E. 791). "The postponement of the trial of a case on account of the absence of counsel therein, who is, without leave, engaged in the trial of a case in a court of a different circuit, is in the discretion of the court, and a postponement for such cause is not favored." *Kennedy* v. *Dukes,* 137 *Ga.* 209 (2) (73 S. E. 400). In the instant case, the record shows that one of the attorneys of record for the plaintiff in error, defendant in the trial court, participated in the trial, and fails to show any compliance with the statutory requirements as to a motion for continuance, and indicates only that counsel moved for a continuance "because of the absence of leading counsel, who he stated were engaged in the trial of another case in the superior court" of another county. Therefore, the trial judge did not err in denying such motion for continuance.

■ "Concordance of name alone is some evidence of identity. Residence, vocation, ownership of property, and other like facts may be proved. Reasonable certainty is all that can be required. In civil suits parties are generally relieved from the onus of proving identity, as it is a fact generally more easily disproved than established." Code, § 38-304. In the instant suit by the beneficiary on a policy insuring the life of his brother, even if under this rule the burden of proving that the person, bearing the same name as the insured and as to whom proof of death by pleuropneumonia was made, was the insured named in the policy, the onus was sufficiently met by the plaintiff's testimony, admitted

without objection, that his brother, of the name stated in the policy, was a world-war veteran, that the Veterans' Bureau in Washington, D. C., informed him of his brother's death, and that upon further inquiry he found that his brother had died in a town in New Jersey. No evidence having been presented by the defendant to dispute such identity, a finding on that question was demanded for the plaintiff.

■ A finding also was demanded in favor of the plaintiff on the issue as to the payment of premiums, under his undisputed testimony that he "paid the premiums on this policy until the fall of 1930, or soon thereafter," and that the death of the insured (without immediate knowledge of the parties) had occurred in 1929, irrespective of the admissibility of additional documentary evidence, to which exception is taken, seeking to show specific payments.

■ "Although the time in which the insurer must be notified of the death of the insured and proofs thereof furnished is fixed by the contract of insurance, yet if the death of the insured is unknown to the beneficiary and occurs while the policy is in force, and it is not the fault of the beneficiary that the death of the insured is unknown to her, and thereby a literal compliance with the terms of the policy is rendered impossible, the giving of the notice within a reasonable time after the discovery of the death of the insured, or within the time stipulated after the cause preventing prior compliance has ceased to exist, would be a sufficient compliance to prevent a forfeiture of the policy." These matters are generally questions of fact for the jury (*Pilgrim Health &c. Ins. Co.* v. *Chism*, 49 *Ga. App.* 121 (2, 3), 174 S. E. 212), except in clear and undisputed cases. A finding for the plaintiff was demanded on these questions, under his undisputed testimony that the insured, his brother, died in New Jersey while he himself was living in Georgia; that he had tried through the Red Cross to locate his brother, later through the Veterans' Bureau found that his brother was dead, and then verified this by further investigation; that he "did not know of the death of [his brother] until June 18, 1934, and . . had no means of learning of his death;" that "failure to learn of the death . . was no fault of" the plaintiff; that previously he had kept in touch with the insured through another brother in Ohio, but after that brother

"quit hearing from" the insured, the plaintiff "made diligent search and inquiries for his whereabouts, but did not find him until [the plaintiff] learned that he had died . . on August 17, 1929;" and that after such information, the plaintiff made full proofs of death, although not on the specified blanks of the insurer, when the insurer refused his request to furnish blanks for this purpose. By this refusal the defendant waived the right to insist upon the use of such blanks.

■ Although the policy provided that it would be paid "upon surrender of the policy and all receipt books," a recovery was not precluded by a failure of the evidence to show the surrender of any receipt books. The reference in the policy to "all receipt books" necessarily meant only such books as were in the custody or control of the beneficiary, or also perhaps the legal representative of the insured. The answer not denying the averment in the original petition that "no receipt books are in the control or possession of petitioner," and not stating that the averment could be neither admitted nor denied because of the want of sufficient information, the averment must be "taken as prima facie true." Code, § 81-103. Since the plaintiff testified without dispute that he himself had the policy issued and paid the weekly premiums thereon until after the death of the insured, any receipt books, if issued, to show such payments would have been in possession of the plaintiff rather than the insured or his legal representative after death. The plaintiff further testified:, "I do not have the control or the possession of the receipt books showing the payment of the premiums on said policy of insurance;" and there was no proof that any such books had ever been delivered either to the plaintiff or to the insured.

■ The verdict for $168, the face amount of the policy, being demanded in favor of the plaintiff, irrespective of the merit of any of the special grounds, excepting to charges and refusals to charge the jury, and to the harmless admission of cumulative documentary evidence as to the payment of specific premiums, the court properly refused a new trial.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*